$1^{2}$

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
FILED

**JUL 1 3 2000**

Michael N. Milby
Clerk of Court

| | |
|---|---|
| THE UNITED STATES OF AMERICA FOR §<br>THE USE OF AMS CONSTRUCTION §<br>COMPANY, INC.,  d/b/a AMS STAFF §<br>LEASING. §<br> §<br>      Plaintiff, §<br> §<br>v. §<br> §<br>CENTEX CONSTRUCTION COMPANY, INC., §<br>SEABOARD SURETY COMPANY, and §<br>AMWEST SURETY INSURANCE §<br>COMPANY, §<br> §<br>      Defendants. § | NO. B-00-062 |

## RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY
## INSURANCE COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS
## AND BRIEF IN SUPPORT

Plaintiff AMS Construction Co., Inc., d/b/a AMS Staff Leasing ("AMS") files its Response

to Amwest Surety Insurance Company's ("Amwest") Rule 12(b)(1), (3) and (6).  Authorities and

evidence presented in this Response mandate that Amwest's Motion should be denied since:

    A.    **Amwest has failed to demonstrate that there is absolutely no possibility that
AMS can recover by way of its bond claim against Amwest.**

    B.    **This Court has jurisdiction over the dispute between AMS and Amwest based
on pendent jurisdiction.**

    C.    **Venue is proper in this Court.**

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE
COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT**      Page 1
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AMS12Rresp CSN.wpd

# I.

## PRELIMINARY STATEMENT

In order for Defendant to prevail on its 12(b)(6) motion, this Court must determine, as a matter of law, that AMS, a staff leasing company, is not a provider of labor. Defendant has cited no case law or statutory authority that supports this proposition. Additionally, such a ruling would be contrary to the Texas Staff Leasing Services Act and the parties' own agreement prior to starting work on the Brownsville Federal Courthouse (the "Brownsville Courthouse Project"). *See* Tex. Labor Code Ann. § 91.001, et. seq.

Because this lawsuit arises under federal law, the Miller Act, for the provision of labor on the Brownsville Courthouse Project, this Court has pendant jurisdiction of AMS's state law claims against Amwest. 40 U.S.C.A. §270, et seq.; 28 U.S.C.A. §§ 1331 and 1367(a). Additionally, venue is not improper in this Court pursuant to 40 U.S.C.A. § 270b(b) and the documentary evidence attached to this Response.

# II.

## FACTUAL BACKGROUND

Strong Hold Masonry, Inc. ("Strong Hold") contracted with AMS to provide labor for a government project that involved the Brownsville Federal Courthouse (the "Brownsville Courthouse Project"). Strong Hold was a subcontractor and Centex was the General Contractor for the Brownsville Courthouse Project. Seaboard is the surety that issued a government payment bond for Centex on the Brownsville Courthouse Project. Amwest is the surety that issued a Subcontract Labor and Material Bond (hereinafter referred to as "Subcontract Bond") to Strong Hold Masonry,

Inc. to which AMS is a: :ended third-party beneficiary and/or "Cla: int." AMS has sued Centex, Seaboard, and Amwest for the sum of $229,210.64 for the labor AMS provided as a Strong Hold subcontractor. AMS's claims against Seaboard and Centex are governed by the Miller Act. AMS has a state law claim as a third-party beneficiary of the contract between Amwest and Strong Hold.

III.

### ARGUMENT AND AUTHORITIES

**A.    AMS has stated a claim for which relief can be granted by this Court.**

    **1.    The standard.**

In considering a motion to dismiss for failure to state a claim, the court must accept as true the well-pleaded facts and any reasonable inferences which may be drawn from them. *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061 (5th Cir. 1994).

    **2.    AMS provided labor for the Brownsville Courthouse Project.**

AMS is a staff leasing company and is licensed in Texas pursuant to the statutory requirements of the Texas Staff Leasing Services Act. See Exhibit A para. 2 of the Affidavit of Charles D. Wood, attached and incorporated herein for all purposes. AMS was a subcontractor that supplied labor to subcontractor, Strong Hold, at the Brownsville Courthouse Project.

The facts establishing the relationship between AMS and Strong Hold at the Brownsville Courthouse Project are documented by the following evidence.

    1.    AMS and Strong Hold Masonry, Inc. ("Strong Hold") entered into a Staff Leasing Agreement ("Agreement") whereby AMS agreed to furnish labor to be used at the Brownsville Courthouse Project in Brownsville, Texas and Strong Hold, the subcontractor for the project, agreed to pay AMS the invoice price of the labor furnished to Strong Hold. *See* Affidavit of Charles D. Wood at p. 1, para. 3, referenced as Exhibit "A" and incorporated herein for all purposes.

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE
COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT**        Page 3
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AMS12Bresp.CSN.wpd

2.  Pursuant to the terms of the Agreement, AMS invoiced Strong Hold for the labor furnished and made the payroll for Strong Hold and Strong Hold agreed to pay AMS a fee for its services.  Exhibit "A", p. 2, para. 3.

3.  AMS provided the labor and paid all laborers for the months of October, November, and December of 1998 and for January, February, March, April, and May 1999. AMS has not been paid for the labor it supplied and Strong Hold has an outstanding balance in the amount of $229,210.64.  Exhibit "A", p. 2, para. 4.

4.  Pursuant to the Agreement between AMS and Strong Hold, AMS was the employer of the employees and AMS leased the employees back to Strong Hold.  In accordance with the terms of the Agreement and federal and state law, all employees were reported to the United States and Texas as employees of AMS and were listed under AMS's federal tax identification number. AMS paid all federal, state and local taxes assessed for its employees and agreed to pay all payroll taxes and collect taxes from the payroll of its employees.  AMS was also responsible for sending its employees W-2 forms at the end of the calendar year.  The W-2 forms identified AMS as the employer for the employees. Exhibit "A", p. 2, para. 5 and Attachment 1 to Exhibit "A".

5.  AMS retained the exclusive right of direction and control over the employees and had the right to hire, fire, discipline, and reassign any of the employees at any time.  AMS also retained the right of direction and control over the adoption of employment and safety policies for the employees AMS leased to Stronghold.  Exhibit "A", Attachment 1.

The corresponding provisions of the Texas Staff Leasing Services Act at § 91.032 requires AMS to:

1) retain the right of direction and control over the employees;

2) assume responsibility for the payment of wages to the employees, without regard to payments made by the client company to AMS, and collect and pay the employees' payroll taxes;

3) have responsibility for adopting employment and safety policies;

4) retain the right to hire, fire, direct, and control the employees; and

5) retain the right of direct and control over the management of workers' compensation claims, claim filings, and related procedures.

Tex. Labor Code Ann. § 91.032(1)-(4) (Vernon 1996)[1]

6.      In October 1998 through May 1999, all of the employees leased to Strong Hold for the Brownsville Courthouse Project were employees of AMS. AMS was responsible for payment of the wages to the employees even when Strong Hold did not pay AMS in accordance with the terms of the Agreement. Exhibit "A", Attachment 1.

7.      In September 1998, AMS, Centex Construction Company, Inc.("Centex") and Strong Hold entered into a Joint Check Payment Agreement regarding the Brownsville Courthouse Project. See Exhibit "A", Attachment 2. As set forth in the agreement, Centex was the general contractor for the project, Strong Hold was a subcontractor, and AMS was the supplier of labor for the project. See Attachment 2 to Wood Affidavit.

8.      AMS was provided a copy of the Payment Bond between Strong Hold and Amwest. Strong Hold represented to AMS that it had purchased a Payment Bond for the Brownsville Courthouse Project and that AMS was an intended beneficiary of that Payment Bond.

Amwest's position that a staff leasing company is not a supplier of labor is contrary to Texas case law and the Texas Staff Leasing Services Act. Tex. Labor Code Ann. §§ 91.001, et seq. In *Texas Workers' Compensation Ins. Fund v. Del Industrial, Inc.*, the Texas Supreme Court ruled that the Texas Staff Leasing Services Act places primary responsibility for the workers on the staff leasing company, not the client company. *Texas Workers' Compensation Ins. Fund v. Del Industrial, Inc.*, 43 Tex. Sup. Ct. J. 589, 2000 WL 351207*3 (Tex. 2000). The Texas Supreme Court outline the following requirements placed on a staff leasing company by the Staff Leasing Services Act:

- **Must retain the right of direction and control over the workers;**

- **Must assume responsibility for the payment of wages to the employees, without regard to payments made by the client company to the staff leasing company, and collect and pay the employees' payroll taxes;**

---

[1] Any amendments to the Texas Staff Leasing Services Act effective <u>after</u> the date of the Agreement are not applicable to this case. *See* Tex. Labor Code Ann. § 91.032, Notes.

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE
COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT**      Page 5
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AMS12Bresp.CSN.wpd

- **Inform the employees of the contractual agreement between the staff leasing company and the client company;**

- **Responsible for adopting employment and safety policies;**

- **Must retain the right to hire, fire, direct, and control the employees; and**

- **Must retain the right of direction and control over the management of workers' compensation claims, claim filings, and related procedures.**

*Texas Workers' Compensation Ins. Fund v. Del Industrial, Inc.*, 43 Tex. Sup. Ct. J. 589, 2000 WL 351207*3 (Tex. 2000) citing Tex. Labor Code Ann. §§ 91.032(1), 91.032(2), (3), 91.031(b), and 91.032(1), (4).

The *Del Industrial* Court found the staff leasing company and the client company to be "coemployers" only regarding the staff leasing company's election of workers' compensation coverage for the employees. *Id.* (emphasis added).

Both Texas case law and statutory law demonstrate that AMS is an employer that supplies labor and not merely an administrative service as suggested by Amwest. Moreover, the contractual agreements between AMS, Strong Hold and the general contractor establish that the parties acknowledged and agreed that AMS was a subcontractor to Strong Hold who supplied labor for the Brownsville Courthouse Project.

Amwest's 12(b)(6) alleges that AMS is not a subcontractor of its insured, Strong Hold, and suggests that AMS is not entitled to make a claim against the bond because:

- AMS had an ongoing relationship with Strong Hold not unique to the project or limited to that particular project;

- AMS is not a "subcontractor" but a co-employer or a joint venturer as to this particular project; and

- AMS was providing administrative services and not labor or materials for the project.

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT**                    Page 6
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AMS12Bresp.CSN.wpd

*See generally,* Rule 12(b)(1), 12(b)(3) and 12(b)(6) Motions of Amwest Surety Insurance Company.

Amwest is unable to cite this Court to any authority supporting its position that a staff leasing company is not a supplier of labor and simply provides administrative services, without any employment responsibilities, to the client company because Amwest's position is contrary to the Texas Staff Leasing Services Act.

Amwest's position denies logic. The real issue is: What is supplying labor as opposed to merely providing administrative services? AMS does not deny the existence of administrative service providers, to which Amwest refers, nor does AMS deny that these administrative service providers merely provide payroll services. AMS is not one of these services nor was it contemplated by the contractual agreements between the parties that AMS merely provide payroll services. In fact, such an agreement would be contrary to the Texas Staff Leasing Services Act by which AMS is governed. Common sense tells us that "supplying labor" means providing employees to do the labor. The Staff Leasing Act defines a "client company" as a person that contracts with a license holder (staff leasing company) and is assigned employees by the staff leasing company under the contract. Tex. Labor Code Ann. § 91.001(3). Supplying labor presumes that there are employment responsibilities assumed by the staff leasing company such as: 1) payment of wages; 2) supervision of the workers; 3) provision of workers' compensation insurance; 4) payment and withholding of taxes; 5) right of direction and control over the adoption of employment and safety polices; 6) management of workers' compensation claims; and 7) right to hire, fire, discipline, and reassign employees. All of which AMS is contractually and statutorily bond to do.

The 1999 Amendments to the Texas Staff Leasing Services Act defines "staff leasing services" as an arrangement by which <u>employees</u> of a staff leasing company are assigned to work at

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE
<u>COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT</u>**                    Page 7
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AMS12Rresp.CSN.wpd

a client company and which employment responsibilities are in fact shared by the staff leasing company and the client company. Tex. Labor Code Ann. §91.001(14) (Vernon 1996 & Supp. 1999) (emphasis added). The Act further provides that the staff leasing company shares some--but not all-- of the above-referenced employment responsibilities with the client company only to the extent it is necessary to the operation of the client company's business. *See* Tex. Labor Code Ann. § 91.032(b). (Vernon 1996 & Supp. 1999). In other words, the 1999 Amendments do not remove primary responsibility for the employees from the staff leasing company. Thus, Amwest's position not only defies logic it denies applicable case and statutory law and the contracts between the parties.

Amwest reliance on *United States v. Grubb*, 358 F.2d 508 (9th Cir. 1966) to support its argument that AMS is not a subcontractor of labor is misplaced. To begin with, the *Grubb* case did not involve staff leasing. The court in *Grubb* found that the Miller Act claimant was actually a joint venturer with the general and not a subcontractor. The court based its decision on the trial court's findings regarding the agreements between the subcontractor and contractor as well as the conduct of the contractor and its subcontractor in that the subcontractor assumed all of the payroll and disbursements to all other subs, approved all of the bills, chose the subcontractors, failed to register as a subcontractor with the Bureau of Reclamation until January 1960 (the agreements were signed in September 1959), the knowledge of the subcontractor that the contractor was diverting funds from the project, and the notice that the subcontractor had of this activity by the contractor. *See United States v. Grubb*, 358 F.2d at 512.

In the present case, there is no evidence that the parties acted other than what was contemplated by their agreements. Strong Hold would provide the masonry and stone work for the project, Centex would be the contractor and AMS would be a subcontractor who provided labor for

the projects. Amwest has presented no evidence that AMS was in fact a joint venturer to Strong Hold and not a subcontractor.

Unlike *Grubb*, AMS did not 1) supply materials to the project; 2)assume full management of the job; 3) have a Partnership Agreement with Strong Hold; 4) agree to share profits or losses with Strong Hold; 5) assume responsibility for Strong Hold's own payroll; 6) have authority to approve all bills by Strong Hold; or 7) have any knowledge of any diversions of funds, if any, from the project. Additionally, AMS was registered on the Project as a subcontractor.

In order to establish a joint venturer position, Amwest would be required to present evidence to the court and obtain a ruling by way of summary judgment. Amwest's attempt to have AMS's claims dismissed by way of a 12(b)(6) motion is improper. Since the allegations in AMS's complaint are taken as true, AMS has pleaded a proper bond case. Amwest's reliance on *United States v. Grubb*, 358 F.2d 508 (9th Cir. 1966) for a 12(b)(6) motion is improper because *Grubb* is based on factual issues that are outside the complaint.

Accepting AMS's well-pleaded facts as true and given the law in Texas, Amwest's Rule 12(b)(6) Motion must be denied. *See Tuchman*, 14 F.3d at 1067.

I.    **This Court has pendant jurisdiction over the dispute between AMS and Amwest.**

Amwest does not dispute that AMS has asserted a Miller Act claim against other Defendants for which this Court has jurisdiction. Therefore, because this lawsuit arises under federal statutory law, the Miller Act for the provision of labor provided on the Brownsville Courthouse Project, this Court has pendant jurisdiction of AMS's state law claim against Amwest. 40 U.S.C.A. §270, et seq.; 28 U.S.C.A. §§ 1331 and 1367(a). Therefore, this Court should deny Amwest's Rule 12(b)(1) Motion to Dismiss.

**J.    Venue is pr        r in this Court.**

Venue is not improper in this Court pursuant to 40 U.S.C.A. § 270b(b) and the documentary evidence presented by AMS.   Therefore this Court should deny Amwest's Rule 12(b)(3) Motion to Dismiss.

## IV.

### RELIEF REQUESTED

For all of the foregoing reasons, AMS respectfully requests that this Court deny Amwest's Rule 12(b)(1), Rule 12(b)(3) and rule 12(b)(6) Motions to Dismiss.

In the event that this Court considers extrinsic matters in determining the merits of Amwest's Motions to dismiss, AMS requests that the Court convert Amwest's motions to a summary judgment motion with proper notice to AMS.

In the alternative, if this Court finds that AMS has not asserted a claim against Amwest in its Original Complaint, AMS requests that the Court grant it leave to amend its Original Complaint.

FOR THESE REASONS, the United States of America for the use and benefit of Plaintiff AMS Construction Company, Inc. d/b/a AMS Staff Leasing requests that this Court deny its entirety Rule 12(b)(1), Rule 12(b)(3) and Rule 12(b)(6) Motions of Amwest Surety Insurance Company and grant AMS any and such other relief that it may be justly entitled.

Respectfully submitted,


REED & ASSOCIATES
Providence Tower, Suite 225W
5001 Spring Valley Road
Telephone: (972) 991-2626
Fax: (972) 991-2678

WILLIAM E. REED
State Bar No. 16748500


**LAW OFFICE OF HORACIO L.BARRERA**


Horacio L. Barrera
State Bar No. 01805800
I.D. 2801
1201 E. Van Buren Street
Brownsville, Texas 78520
Tel: (956) 546-7159
Fax: (956) 544-0602

Attorneys For Plaintiff
**AMS CONSTRUCTION COMPANY, INC.
D/b/a AMS STAFF LEASING**

# CERTTIFICATE OF SERVICE

I Horacio L. Barrera, hereby certify that a true and correct copy of foregoing instrument was forwarded to the following to all counsel of record on this __13ᵗʰ__ day July, 2000 in accordance with the Federal Rules of Civil Procedure.

**Mr. David G. Surratt, Esq**
Canterbury, Stuber Edler, Gooch & Surratt
One Lincoln Centre
5400 LBJ Freeway, Suite 1300
Dallas, Texas 75240-6254

**Mr. Todd Lonergan, Esq.**
Coats, Rose, Yale, Reyna & Lee, P.C.
800 First City Tower
1001 Fannin
Houston, Texas 77002-6707

**Horacio L. Barrera**

# EXHIBIT A

CVisPDF - www.fastio.com

# EMPLOYEE LEASING AGREEMENT

This Agreement made this 28th day of Jan. , 19 98 by and between      TNC          , STRONG HOLD MASONRY
hereinafter called the "Client Company" and AMS Staff Leasing, Inc., hereinafter called "AMS".

WHEREAS, Client Company has contracted with AMS for leased employees on various projects AND

WHEREAS, AMS wishes to provide labor on such projects;

FOR CONSIDERATION HEREINAFTER THE NAMED PARTIES AGREE AS FOLLOWS:

**ARTICLE 1. CONTRACT DOCUMENTS:** The contract documents consist of the following:

(a) This Staff Leasing Agreement

**ARTICLE 2. TIME:** AMS agrees to begin work immediately upon notification by the Client Company and to complete the work governed by this Employee Leasing Agreement.

**ARTICLE 3. EXTRAS:** No deviation from the work specified in the Employee Leasing Agreement will be permitted without prior written permission from the Client Company.

**ARTICLE 4. ASSIGNMENT:** Assignment of this Employee Leasing Agreement is not permitted without prior written permission from the Client Company.

**ARTICLE 5. INDEMNITY AND INSURANCE:**

(a) AMS agrees to obtain and pay for Workers' Compensation and Employers Liability Insurance, including Occupational Disease Coverage, providing statutory benefits and with liability limits of not less than $500,000 for Employers Liability Coverage. AMS agrees to furnish Client with Certificates of Insurance indicating compliance with the above requirements and each Certificate shall contain a provision that the same will not be canceled without thirty (30) days prior written notice to the Client Company. Proof of insurance coverage and AMS's Federal Tax ID Number will be submitted upon request within 10 days of request.

(b) AMS agrees to protect, indemnify and hold Client Company harmless against all loss, cost or expense which Client Company may incur or sustain in connection with or in consequence of any claim of occupational injury relating to AMS's employees arising in any manner out of or in any way connected with or a result of performance of this subcontract, or breach thereof, or any activity caused by any negligent act or omission on the part of AMS, no matter by whom or on whose behalf such claim, demand, suit or action may be asserted or brought. In addition, AMS will service any such claim or demand, defend any such suit or action, and judgement, including court costs which may be awarded therein.

(c) Client Company agrees to protect, indemnify and hold AMS harmless against any liability, expense (including court costs and attorney fees) and claims of any nature whatsoever, which AMS becomes legally obligated to pay as a result of the acts, errors or omissions of Client Company related directly or indirectly to this Employee Leasing Agreement, including but not limited to: Client Company's negligence, gross negligence or intentional acts or omissions; any liability alleged against AMS arising from the relationship between or among AMS, Client Company, or AMS's employees; and any action, assessment, penalty, claim, demand proceeding or suit incident to any of the foregoing. Client Company assumes entire responsibility and unconditionally indemnifies AMS for any claim regardless of whether such claims are founded in whole or in part upon the alleged negligence of AMS, AMS's representatives or the employees, agents, invitees or licensees of AMS.

**ARTICLE 6. TAXES:** AMS agrees to pay any and all federal, state or local taxes which are, or may be, assessed upon labor which is furnished under this Employee Leasing Agreement.



EXHIBIT "A"

**ARTICLE 7. CONTRACT PRICE:** Client Company agrees to ____ AMS in weekly payments in accordance with payroll and app ___ ble rate burden of __20%__. Such weekly payments may be conditioned on AMS's execution of a release of any mechanics lien, stop notice or bond rights that AMS may have for the completed work for which payment is made.

**ARTICLE 8. CONTRACT BINDING:** The Employee Leasing Agreement shall be binding on the parties, their successors, heirs and assigns.

**ARTICLE 9. RESPONSIBILITIES:** The Client Company shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury, or loss. The Client Company shall provide, erect, and maintain, as required by conditions, performance of the contract, or law or regulation, safeguards for safety and protection. Client Company's responsibility includes, but is not limited to, liability for OSHA regulations, citations, and fines.

**ARTICLE 10. STATUTORY CONTRACT REQUIREMENTS:** In accordance with the requirements of state law (V.T.C.A. Art. 9104, Sec. 6), this contract provides that AMS:

(a) Reserves the right of direction and control over Employees assigned to Client Company's worksites;

(b) Assumes responsibility for the payment of wages to Employees without regard to payments by the Client Company to AMS;

(c) Assumes responsibility for the payment of payroll taxes and collection of taxes from payroll on employees;

(d) Retains the right to hire, fire, discipline, and reassign Employees, and;

(e) Retains the right of direction and control over the adoption of employment and safety policies and the management of Workers' Compensation claims, claims filings and related procedures.

IN WITNESS WHEREOF the parties have executed this Employee Leasing Agreement the day and year written above.

CLIENT COMPANY

STRONG HOLD MASONRY, INC.

By _Pedro Armando G_____

PEDRO ARMANDO GUTIERREZ

Title PRESIDENT

AMS

AMS STAFF LEASING

By _C. A. Lum_____

Title _President_

# EXHIBIT A-3

CVisPDF – www.fesisi.com

# EXHIBIT C

## PAYMENT BOND



**KNOW ALL MEN BY THESE PRESENTS:**

That I/we **Strong Hold Masonry, Inc.** of 702 West Expressway 83 (Bldg. C), Pharr, TX 78577 d/b/a an individual/partnership/corporation organized under the laws of the State of __Texas__, hereinafter called the Subcontractor, and **Amwest Surety Insurance Company** of **P. O. Box 4500, Woodland Hills, CA** a corporation organized under the laws of the State of __Nebraska__, hereinafter called the Surety, are held and firmly bound unto Centex Construction Company, Inc. of Dallas, Texas, hereinafter called the Contractor, in the sum of **$2,750,000.00 (Two Million Seven Hundred Fifty Thousand Dollars)** for the payment whereof the Subcontractor and the Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS**, the Subcontractor has, by means of a written agreement dated **November 22, 1996**, entered into a Subcontract, No. **708-BRNSV1-042000-S** hereinafter called the Subcontract, with Contractor for work at the project known as New U.S. Courthouse located at Brownsville, TX, which said Subcontract is incorporated herein by reference and made a part hereof for all purposes.

**NOW THEREFORE**, the condition of this obligation is such that if the Subcontractor shall make payment to all claimants for all costs and expenses resulting from the performance of this Subcontract and for all labor, materials, equipment, supplies, services and the like, used or reasonably required for use in the performance of this Subcontract, for all or any part of which the Contractor or Owner is liable, failing which such claimants shall have a direct right of action against the Subcontractor and Surety under this obligation, subject to the Contractor's priority, and/or the Contractor shall have the right to bring an action against the Subcontractor and Surety on behalf of unpaid claimants, then this obligation shall be null and void, otherwise, it shall remain in full force and effect;

**AND PROVIDED**, that any alterations which may be made in the terms of the Subcontract or in the work to be done under it, or the giving by the Contractor of any extension of time for the performance of the Subcontract, or any other forbearance on the part of either the Contractor or the Subcontractor to the other, shall not in any way release the Subcontractor and the Surety, or either of them, their heirs, executors, administrators, successors or assigns, from their liability hereunder, notice to the Surety of any such alteration, extension or forbearance being hereby waived.

**AND PROVIDED FURTHER**, that any increase in the Subcontract amount shall automatically result in a corresponding increase in the penal amount of the bond without notice to or consent from the Surety, such notice and consent being hereby waived.

**WITNESSED AND SEALED** this **6TH** day of __December__, A.D. 1996.

WITNESSES:

__Michelle A. Cantu__

__Salinas__

(COUNTERSIGNED: If applicable)

_____
Resident Agent

_____
Typed Name

**Strong Hold Masonry, Inc.**
Subcontractor

By: __Pedro A. Gutierrez__

Typed Name **PEDRO A. GUTIERREZ**

Title **PRES. / OWNER**

**Amwest Surety Insurance Company**
Surety

By: __Robert R. Garza__

Typed Name **Robert R. Garza**

Title **Attorney-In-Fact**

[top portion of document faded and illegible]

(210) 542-0080

KNOW ALL BY THESE PRESENTS, that Amwest Surety Insurance Company, a Nebraska corporation (the "Company"), does hereby make, constitute and appoint:

**MARY MARTINEZ**
**DIANA GONZALEZ**
**ROBERT GARZA**
**IRMA SALINAS**
**ROBERT R. GARZA**
**AS EMPLOYEES OF TEXAS VALLEY INSURANCE AGENCIES**

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereon if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follow:

MASONRY CONSTRUCTION - NEW U.S. COURTHOUSE BROWSVILLE TEXAS

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of the Company, are now in full force and effect.

Bond No. _____ 1312679 _____   Signed & sealed this   6TH   day of   DECEMBER   96

Karen G. Cohen, Secretary

* * * * * * * * * *   **RESOLUTIONS OF THE BOARD OF DIRECTORS**   * * * * * * * * * *

This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975:

RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.

RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and bind upon the Company:

(i) when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or

(ii) when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or

(iii) when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company has caused these presents to be signed by its proper officers, and its corporate seal to be hereunto affixed this 14th day of December, 1995.

John E. Savage, President

Karen G. Cohen, Secretary

State of California
County of Los Angeles

On December 14, 1995 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature   Peggy B. Lofton   (Seal)
Peggy B. Lofton, Notary Public

PEGGY B. LOFTON
Commission #1036068
Notary Public — California
Los Angeles County
My Comm. Expires Aug 6, 1999

**Amwest**
6320 Canoga Avenue  Post Office Box 45  Woodland Hills, CA  91365-4500  TEL 818/704-1111

COPY — FILED WITHOUT WATERMARK (ILLEGIBLE TO VIEW)

# JOINT CHECK PAYMENT AGREEMENT

WHEREAS, **CENTEX CONSTRUCTION COMPANY, INC.** (hereinafter referred to as "CONTRACTOR") has been awarded a contract for construction of the **United States Federal Building, Courthouse** (hereinafter referred to as "PROJECT"); and

WHEREAS, Contractor has entered into a subcontract agreement with **Strong Hold Masonry, Inc.** (hereinafter referred to as "SUBCONTRACTOR") for the **Masonry and Stone Work** on the PROJECT; and

WHEREAS, **AMS Staff Leasing** (hereinafter referred to as "SUPPLIER") has entered into an agreement with SUBCONTRACTOR for the supply labor to the PROJECT a copy of which is attached as EXHIBIT A and for the amount not to exceed **$64,000.00**; and

WHEREAS, CONTRACTOR, SUBCONTRACTOR AND SUPPLIER desire to enter into an agreement for payments to be made jointly to the SUBCONTRACTOR and SUPPLIER for the above described materials for the mutual benefit of all the parties;

NOW, THEREFORE, in consideration of the mutual benefits to be derived from this arrangement the parties hereby agree as follows:

1.  SUPPLIER hereby acknowledges that the agreement with the SUBCONTRACTOR attached as Exhibit A to this agreement represents the entire materials ordered from the SUPPLIER by the SUBCONTRACTOR for the PROJECT and the dollar amount indicated as the sales price for said materials is the total and complete amount therefor; and

2.  SUPPLIER will provide to CONTRACTOR copies of all subsequent modifications to the agreement attached as Exhibit A when executed by the SUBCONTRACTOR; and

3.  SUPPLIER will copy to the CONTRACTOR all invoices to the SUBCONTRACTOR related to the PROJECT; and

4.  SUBCONTRACTOR will submit to the CONTRACTOR with each monthly requisition for payment on the PROJECT copies of all invoices received from the SUPPLIER for materials provided to the PROJECT through the date of the requisition for which payment has not been previously received; and

5.  CONTRACTOR shall pay by a negotiable check drawn by CONTRACTOR and made payable jointly to SUBCONTRACTOR and SUPPLIER the full amount of these invoices at the time prescribed in the subcontract agreement. In accordance with the terms of the subcontract agreement between CONTRACTOR and SUBCONTRACTOR, retainage related to these materials will accrue against amounts otherwise due and owning directly to the SUBCONTRACTOR; and

6.  SUBCONTRACTOR agrees to indorse the check at the offices of the CONTRACTOR, and CONTRACTOR will mail the check directly to the SUPPLIER; and

7.  It is expressly agreed and understood by CONTRACTOR, SUBCONTRACTOR and SUPPLIER that this agreement does not constitute a guarantee of payment by CONTRACTOR to either SUBCONTRACTOR or SUPPLIER. Rather this agreement has the sole purpose of establishing a method by which CONTRACTOR shall make payment to SUBCONTRACTOR, for materials furnished by SUPPLIER to the PROJECT only to the extent that amounts paid would otherwise be due under the subcontract agreement between CONTRACTOR and SUBCONTRACTOR; and

8.  CONTRACTOR's obligation hereunder shall extend only for materials delivered to and incorporated in the PROJECT and for the labor expended on the PROJECT site and CONTRACTOR shall have no obligation to issue a check under this agreement for any materials and labor not so furnished; and

9.  At the time of full and final payment to the SUPPLIER for the materials supplied to the PROJECT, SUPPLIER will provide CONTRACTOR a full and complete waiver of claims and/or lien against the PROJECT, and all obligations of all of the parties pursuant to this agreement shall be considered satisfied in full. All notices required by or pursuant to this agreement shall be delivered by hand or by U.S. Mail to the following addresses:

FOR THE CONTRACTOR:  CENTEX CONSTRUCTION COMPANY, INC.
P. O. BOX 299009
DALLAS, TX 75229

FOR THE SUBCONTRACTOR:  Strong Hold Masonry, Inc.
716 W. Expwy 83
Pharr, Tx. 78577

FOR THE SUPPLIER:  AMS Staff Leasing
5617 Grissom Road, Suite 101
San Antonio, TX 78238

This constitutes the full extent of our agreement related to joint check payments on the PROJECT, and cannot be modified verbally.

IN WITNESS WHEREOF, the parties hereto cause this agreement to be executed by their authorized representative on this __11__ day of __September__, 19__98__.

CENTEX CONSTRUCTION COMPANY, INC.

BY: _____ 9/11/98

ATTEST: _____ ITS:

ATTEST: _____ ITS:

Strong Hold Masonry, Inc.                      SUBCONTRACTOR

BY: _Michelle Cantu_

AMS Staff Leasing                              SUPPLIER

BY: _____

ATTEST: _____ ITS:

FS-11
JTCKAGRE.SAM
REV 02/98

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE OF AMS CONSTRUCTION COMPANY, INC., d/b/a AMS STAFF LEASING, | § § § § § | |
| Plaintiff, | § § | NO. B-00-062 |
| v. | § § | |
| CENTEX CONSTRUCTION COMPANY, INC., SEABOARD SURETY COMPANY, and AMWEST SURETY INSURANCE COMPANY, | § § § § § | |
| Defendants. | § § | |

## AFFIDAVIT OF CHARLES D. WOOD, JR.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority on this day personally appeared Mr. Charles D. Wood, Jr., who being first duly sworn, upon his oath, states as follows:

1.  My name is Charles D. Wood, Jr. I am over the age of eighteen (18) years, and I am fully competent and qualified in all respects to make this Affidavit. The facts stated within this Affidavit are within my personal knowledge and are true and correct.

2.  I am a shareholder and president of AMS Construction Company, Inc. d/b/a AMS Staff Leasing and d/b/a Regional Management, Inc. ("AMS") and I have been a shareholder and president of this company at all times material hereto. AMS is a staff leasing company and is licensed in the state of Texas. At AMS, I am familiar with all aspects of the business.

3.  AMS and Strong Hold Masonry, Inc. ("Strong Hold") entered into a Staff Leasing Agreement ("Agreement") whereby AMS agreed to furnish labor to be used at the Brownsville Courthouse Project in Brownsville, Texas and Strong Hold, the subcontractor for the project, agreed to pay AMS the invoice price of the labor furnished to Strong Hold.

Pursuant to the terms of the agreement, AMS invoiced Strong Hold for the labor furnished and made the payroll for Strong Hold and Strong Hold agreed to pay AMS a fee for its services. Attached hereto and incorporated herein as Attachment 1 is a true and correct of the Employee Leasing Agreement between AMS and Strong Hold.

4. AMS provided the labor and paid all laborers for the months of October, November, and December of 1998 and for January, February, March, April, and May 1999. AMS has not been paid for the labor it supplied and Strong Hold has an outstanding balance in the amount of $229,210.64.

5. Pursuant to the Agreement between AMS and Strong Hold, AMS was the employer of the employees and AMS leased the employees back to Strong Hold. In accordance with the terms of the Agreement and federal and state law, all employees were reported to the United States and Texas as employees of AMS and were listed under AMS's federal tax identification number. AMS paid all federal, state and local taxes assessed for its employees and agreed to pay all payroll taxes and collect taxes from the payroll of its employees. AMS was also responsible for sending its employees W-2 forms at the end of the calendar year. The W-2 forms identified AMS as the employer for the employees. Attachment 1, Article 6 and Article 10(c).

6. AMS retained the exclusive right of direction and control over the employees including Mr. Graham and had the right to hire, fire, discipline, and reassign any of the employees at any time. AMS also retained the right of direction and control over the adoption of employment and safety policies implemented by Third Coast. See Attachment 1, Article 10(a), (d), (e).

7. In October 1998 through May 1999, all of the employees leased to Strong Hold for the Brownsville Courthouse Project were employees of AMS. AMS was responsible for payment of the wages to the employees even when Strong Hold did not pay AMS in accordance with the terms of the Agreement. See Attachment 1, Article 10(b).

8. In September 1998, AMS, Centex Construction Company, Inc.("Centex") and Strong Hold entered into a Joint Check Payment Agreement regarding the Brownsville Courthouse Project. See Attachment 2. As set forth in the agreement, Centex was the contractor for the project, Strong Hold was the subcontractor, and AMS, through the Staff Leasing Agreement with Strong Hold referenced and attached to the contract as Exhibit "A", was the supplier of labor for the project. See Attachment 2.

9. AMS was provided a copy of the Payment Bond between Strong Hold and Amwest for its records. Attached hereto as Attachment 3 and incorporated herein is a true and correct copy of the Payment Bond between Strong Hold, as subcontractor for the Brownsville Courthouse Project, and Amwest, its surety. Strong Hold represented to AMS that it had purchased a Payment Bond for the Brownsville Courthouse Project and that AMS was an intended beneficiary of that Payment Bond.

**AFFIDAVIT OF CHARLES D WOOD, JR.**                                    Page 2
\\Ntsv02\firmfile\FIRMFILE\AMS\Brownsville\AFFWOOD.CSN.wpd

CSMPDF - www.fenito.com

This concludes my Affidavit.



CHARLES D. WOOD, JR.

**SUBSCRIBED AND SWORN TO** before me this /3ʰᵈ day of July 2000, to certify which witness my official seal.

MARTHA JURSEVSKIS
MY COMMISSION EXPIRES
September 14, 2003

Notary Public, State of Texas

AFFIDAVIT OF CHARLES D WOOD, JR.                                                                Page 3
\\\Nbrv02\firmfile\FIRMFILE\AM5\Brownsville\AFFWOOD.CSN.wpd

# EXHIBIT A-1

CVisPDF – www.fastio.com

# EMPLOYEE LEASING AGREEMENT

This Agreement made this __28th__ day of __Jan.____, 19_98_by and between ____INC.____ **STRONG HOLD MASONRY** hereinafter called the "Client Company" and AMS Staff Leasing, Inc., hereinafter called "AMS".

WHEREAS, Client Company has contracted with AMS for leased employees on various projects AND

WHEREAS, AMS wishes to provide labor on such projects.

FOR CONSIDERATION HEREINAFTER THEY NAMED PARTIES AGREE AS FOLLOWS:

ARTICLE 1. CONTRACT DOCUMENTS: The contract documents consist of the following:

(a) This Staff Leasing Agreement

ARTICLE 2. TIME: AMS agrees to begin work immediately upon notification by the Client Company and to complete the work governed by this Employee Leasing Agreement.

ARTICLE 3. EXTRAS: No deviation from the work specified in the Employee Leasing Agreement will be permitted without prior written permission from the Client Company.

ARTICLE 4. ASSIGNMENT: Assignment of this Employee Leasing Agreement is not permitted without prior written permission from the Client Company.

ARTICLE 5. INDEMNITY AND INSURANCE:

(a) AMS agrees to obtain and pay for Workers' Compensation and Employers Liability Insurance, including Occupational Disease Coverage, providing statutory benefits and with liability limits of not less than $500,000 for Employers Liability Coverage. AMS agrees to furnish Client with Certificates of Insurance indicating compliance with the above requirements and each Certificate shall contain a provision that the same will not be canceled without thirty (30) days prior written notice to the Client Company. Proof of insurance coverage and AMS's Federal Tax ID Number will be submitted upon request within 10 days of request.

(b) AMS agrees to protect, indemnify and hold Client Company harmless against all loss, cost or expense which Client Company may incur or sustain in connection with or in consequence of any claim of occupational injury relating to AMS's employees arising in any manner out of or in any way connected with or a result of performance of this subcontract, or breach thereof, or any activity caused by any negligent act or omission on the part of AMS, no matter by whom or on whose behalf such claim, demand, suit or action may be asserted or brought. In addition, AMS will service any such claim or demand, defend any such suit or action, and judgement, including court costs which may be awarded therein.

(c) Client Company agrees to protect, indemnify and hold AMS harmless against any liability, expense (including court costs and attorney fees) and claims of any nature whatsoever, which AMS becomes legally obligated to pay as a result of the acts, errors or omissions of Client Company related directly or indirectly to this Employee Leasing Agreement, including but not limited to: Client Company's negligence, gross negligence or intentional acts or omissions; any liability alleged against AMS arising from the relationship between or among AMS, Client Company, or AMS's employees; and any action, assessment, penalty, claim, demand proceeding or suit incident to any of the foregoing. Client Company assumes entire responsibility and unconditionally indemnifies AMS for any claim regardless of whether such claims are founded in whole or in part upon the alleged negligence of AMS. AMS's representatives of the employees, agents, invitees or licensees of AMS.

ARTICLE 6. TAXES: AMS agrees to pay any and all federal, state or local taxes which are, or may be, assessed upon labor which is furnished under this Employee Leasing Agreement.

**ARTICLE 7.** CONTRACT PRICE: Client Company agrees to pay AMS in weekly payments in accordance with payroll and applicable ~~ burden of __20%__. Such weekly payments may ~~ conditioned on AMS's execution of a release of any mechanic ~~ en, stop notice or bond rights that AMS may have for the completed work for which payment is made.

**ARTICLE 8.** CONTRACT BINDING: The Employee Leasing Agreement shall be binding on the parties, their successors, heirs and assigns.

**ARTICLE 9.** RESPONSIBILITIES: The Client Company shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury, or loss. The Client Company shall provide, erect, and maintain, as required by conditions, performance of the contract, or law or regulation, safeguards for safety and protection. Client Company's responsibility includes, but is not limited to, liability for OSHA regulations, citations, and fines.

**ARTICLE 10.** STATUTORY CONTRACT REQUIREMENTS: In accordance with the requirements of state law (V.T.C.A. Art. 9104, Sec. 6), this contract provides that AMS:

(a) Reserves the right of direction and control over Employees assigned to Client Company's worksites;

(b) Assumes responsibility for the payment of wages to Employees without regard to payments by the Client Company to AMS;

(c) Assumes responsibility for the payment of payroll taxes and collection of taxes from payroll on employees;

(d) Retains the right to hire, fire, discipline, and reassign Employees; and;

(e) Retains the right of direction and control over the adoption of employment and safety policies and the management of Workers' Compensation claims, claims filings and related procedures.

IN WITNESS WHEREOF the parties have executed this Employee Leasing Agreement the day and year written above.

CLIENT COMPANY

STRONG HOLD MASONRY, INC.

By ~~Pedro G~~
PEDRO ARMANDO GUTIERREZ
Title PRESIDENT

AMS

AMS STAFF LEASING

By

Title

TOTAL P.03

# EXHIBIT A-2

CitiPDF – www.fastio.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA FOR | § | |
| THE USE OF AMS CONSTRUCTION | § | |
| COMPANY, INC., d/b/a AMS STAFF | § | |
| LEASING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO. B-00-062 |
| v. | § | |
| | § | |
| CENTEX CONSTRUCTION COMPANY, INC., | § | |
| SEABOARD SURETY COMPANY, and | § | |
| AMWEST SURETY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

## RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY
## INSURANCE COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS
## AND BRIEF IN SUPPORT

Plaintiff AMS Construction Co., Inc., d/b/a AMS Staff Leasing ("AMS") files its Response

to Amwest Surety Insurance Company's ("Amwest") Rule 12(b)(1), (3) and (6).  Authorities and

evidence presented in this Response mandate that Amwest's Motion should be denied since:

    **A.**    **Amwest has failed to demonstrate that there is absolutely no possibility that AMS can recover by way of its bond claim against Amwest.**

    **B.**    **This Court has jurisdiction over the dispute between AMS and Amwest based on pendent jurisdiction.**

    **C.**    **Venue is proper in this Court.**

**RESPONSE OF AMS STAFF LEASING TO AMWEST SURETY INSURANCE
COMPANY'S RULE 12(b)(1), (3), AND (6) MOTIONS AND BRIEF IN SUPPORT**
\\Ntsrv02\firm file\FIRMFILE\AMS\Brownsville\AMS12Bresp.CSN.wpd

Page 1