37

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 03 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE OF AMS CONSTRUCTION COMPANY, INC., d/b/a AMS STAFF LEASING, <br><br> Plaintiff, <br><br> v. <br><br> CENTEX CONSTRUCTION COMPANY, INC., SEABOARD SURETY COMPANY, and AMWEST SURETY INSURANCE COMPANY, <br><br> Defendants. | § § § § § § § § § § § § § § § § |

NO. B-00-062

### FIRST AMENDED ORIGINAL COMPLAINT OF AMS CONSTRUCTION COMPANY, INC. d/b/a AMS STAFF LEASING

Plaintiff AMS Construction Co., Inc., d/b/a AMS Staff Leasing ("AMS") files its First Amended Original Complaint complaining of Centex Construction Company, Inc. ("Centex"), Seaboard Surety Company ("Seaboard"), and Amwest Surety Insurance Company ("Amwest"), as follows:

### PRELIMINARY STATEMENT

1. Stronghold Masonry, Inc. ("Stronghold") contracted with AMS to provide labor for a government project that involved the Brownsville Federal Courthouse (the "Brownsville Courthouse Project"). Stronghold was a subcontractor and Centex was the General Contractor for the Brownsville Courthouse Project. Seaboard is the surety that issued a government payment bond for Centex on the Brownsville Courthouse Project. Amwest issued a Subcontract Labor and Material

FIRST AMENDED ORIGINAL COMPLAINT OF AMS CONSTRUCTION COMPANY, INC.         Page 1
\\Nsrv02\firmfile\FIRMFILE\AMS\Brownsville\FIRSTAMDCOMPLAINT.wpd

Bond (hereinafter referred to as "Subcontract Bond") to Stronghold Masonry, Inc. to which AMS is an intended third-party beneficiary and/or "Claimant." Amwest represented to AMS that AMS was a subcontractor on the Brownsville Courthouse Project, that AMS was a proper claimant under the Subcontract Bond, and that AMS was owed money for the labor and services it provided to the Brownsville Courthouse Project as subcontractor. Centex, Seaboard, and Amwest owe AMS the sum of $212,000.00 for the labor AMS provided as a subcontractor for Stronghold as outlined in the Miller Act. Although AMS fulfilled its obligations under its contract with Stronghold, Stronghold is financially unable to pay AMS. Accordingly, AMS seeks payment in the amount of $212,000.00 from Defendants Centex and Seaboard as the surety of the government payment bond for the Brownsville Courthouse Project in accordance with the Miller Act. AMS also seeks recovery from Amwest as a third-party beneficiary/claimant of the Subcontract Bond Amwest provided to Stronghold.

## PARTIES

**A.  Plaintiff**

2. Plaintiff AMS Construction Co., Inc. d/b/a AMS Staff Leasing is a Texas corporation with its principal place of business in Dallas County, Texas.

**B.  Defendants**

3. Defendant Centex Construction Company, Inc., a Nevada corporation, has answered and is before the Court for all purposes.

4. Seaboard Surety Company has answered and is before the Court for all purposes.

5. Defendant Amwest Surety Insurance Company has answered and is before the Court for all purposes.

## JURISDICTION & VENUE

6.  This Court has jurisdiction over this cause pursuant to Sections 270a and 270b of Title 40 of the United States Code ("The Miller Act"). Jurisdiction over the defendants is mandatory because, among other things, Brownsville Federal Courthouse, the location of the project, is located in Cameron County, Texas.

7.  Venue is mandatory in this Court, pursuant to §270b(b) of Title 40 of the United States Code Annotated which requires suit to be file in the United States District Court in the district in which the contract was to be performed and executed. The contract was to be performed and executed in Cameron County, Texas.

## FACTS

8.  On information and belief, the United States of America and Centex entered into a contract ("The Contract"), whereby Centex agreed to furnish all the labor and materials and perform all work required for the energy upgrade at the Brownsville Federal Courthouse in Brownsville, Texas.

9.  Pursuant to the Act of Congress approved August 24th, 1935, Centex, as principal, and Defendant Seaboard, as surety, on information and belief, duly executed a standard government form of payment bond to the United States of America. The payment bond was conditioned on whether the principal promptly made payment to all persons supplying labor and materials in the prosecution of the work provided in The Contract. If the contractor Centex and its subcontractors had properly made payment to all persons supplying labor and materials, the obligation was to be voided; otherwise, the bond was to remain in full force and effect.

10. The payment bond entered into by Centex and Seaboard was accepted by the United States of America, and upon such acceptance, the contract for the construction and completion of the energy upgrade to Brownsville Federal Courthouse was awarded to Centex.

11. Stronghold provided Centex with a Subcontract Labor and Material Bond ("Subcontract Bond"). Amwest Surety Insurance Company is the surety on the bond.

12. AMS is in the business of providing staff leasing services to clients. Stronghold, a subcontractor, contracted with AMS to provide labor for the Brownsville Courthouse Project. AMS was a subcontractor with the subcontractor Stronghold for the Brownsville Courthouse Project.

13. During the months of October, November, and December, 1998 and January, February, March, April and May, 1999, AMS, at the special insistence and request of Stronghold, provided labor for work on the project at the Brownsville Courthouse. AMS provided the labor at the request of Stronghold and for the agreed price and reasonable value of $212,000.00.

14. On or about September 11, 1998, Centex entered into an agreement with Stronghold, as subcontractor, and AMS, as a supplier of labor, to issue joint checks to Stronghold and AMS for work and material supplied for the Brownsville Courthouse Project. (*See* Agreement attached hereto as Exhibit "A" and incorporated by reference herein for all purposes).

15. On or about December 2, 1998, Amwest approved and accepted the Joint Check Agreement and agreed that AMS was a subcontractor and a proper claimant under the Subcontract Bond. (*See* Amwest acknowledgment attached hereto as Exhibit "B" and incorporated by reference herein for all purposes).

16. On or about July 29, 1999, Amwest again represented that AMS was a proper claimant under the Subcontract Bond. (*See* letter attached hereto as Exhibit "C" and incorporated by reference herein for all purposes).

## CAUSE OF ACTION AGAINST DEFENDANTS

A. **Miller Act Claim**

17. Plaintiff hereby incorporates the allegations set forth above.

18. Stronghold was a subcontractor of Centex and the labor provided by AMS was required to be performed by Centex under Centex's contract with the United States of America and was provided with the knowledge, consent and approval of Centex.

19. Stronghold has failed and refused to pay AMS the sum of $212,000.00 according to the contract and within ninety days of the due date of the agreement, AMS duly notified Centex, Stronghold and Seaboard. Centex, Stronghold, and Seaboard have failed to make the required payments. The notice to Centex, Stronghold and Seaboard was given and complied with all the rules and requirements of the Miller Act for subcontractor of a subcontractor to perfect its right of action under the bond and the Miller Act.

20. Pursuant to the Miller Act, more than ninety days have elapsed since the day on which the last of the labor was performed, but one year has not elapsed from the day on which the last of the labor was performed by AMS on the Brownsville Courthouse Project.

21. Due demand was made upon Centex for the sum of $212,000.00, and thereafter on Defendant Seaboard, but no part of the $212,000.00 has been paid to AMS. AMS has complied with all the rules and requirements precedent and necessary under the Miller Act to maintain this action under the bond.

B. **Subcontractor Bond**

22. Plaintiff hereby incorporates the allegations set forth above.

23. Plaintiff is a "claimant" as defined by the Subcontract Bond. Plaintiff hereby asserts a claim against Amwest for the sum of $212,000.00, which sum is due an owing. Additionally, Amwest acknowledged and accepted AMS as a proper claimant under the Subcontract Bond. (*See* Exhibits A, B & C attached herein.)

24. All conditions precedent necessary for AMS to assert a claim against the Subcontract Bond have occurred or been established. Therefore, AMS is entitled to recover against Stronghold and Amwest for the labor and employment services it provided.

C. **Fraud**

25. Plaintiff hereby incorporates the allegations set forth above.

26. Plaintiff would show that Defendant Amwest made material misrepresentations to Plaintiff. Specifically, Amwest represented that it acknowledged that Plaintiff was a subcontractor, a proper claimant under the Subcontract Bond, and that AMS would be paid for its labor provided to the Brownsville Courthouse Project. (*See* Exhibits A, B & C attached hereto). Amwest now attempts to assert that AMS was not a subcontractor. Defendant Amwest made the false material representations knowingly with the intention of Plaintiff relying upon the representations when Defendant represented that it acknowledged that AMS was a subcontractor for the Brownsville Courthouse Project, that AMS was a proper claimant under the Subcontract Bond and that it would pay AMS under the Subcontract Bond. (*See* Exhibits A, B & C attached hereto.) Plaintiff relied upon Defendant Amwest's material and intentional misrepresentations and agreed to provide labor and services for the Brownsville Courthouse Project believing it to be protected under the

Subcontract Bond. Defendant Amwest now attempts to deny payment rightfully owed to AMS for labor provided on the project claiming that AMS is not a subcontractor and that AMS merely "donated" its labor, time and resources. The actions of Defendant Amwest constitutes fraud.

27. The fraud perpetrated by Defendant Amwest has caused Plaintiff to suffer actual damages in an amount within the jurisdictional limits of this Court. Plaintiff sues Amwest to recover actual and exemplary damages.

**D.  Negligent Misrepresentations**

28. Plaintiff hereby incorporates the allegations set forth above.

29. Alternatively, and without waiving the above, Plaintiff would show that Defendant Amwest made material misrepresentations to Plaintiff. Specifically, Amwest represented that it acknowledged that Plaintiff was a subcontractor, a proper claimant under the Subcontract Bond, and that AMS would be paid for its labor provided to the Brownsville Courthouse Project. (*See* Exhibit A, B & C attached hereto.) Defendant Amwest negligently, and with reckless disregard for the truth, made the false material representations with the intention of Plaintiff relying upon the representations when it represented that it acknowledged that AMS was a subcontractor on the Brownsville Courthouse Project, that AMS was a proper claimant under the Subcontract Bond and that it would pay AMS under the Subcontract Bond. (*See* Exhibits A, B & C attached hereto.) Plaintiff relied upon Defendant Amwest's material misrepresentations and agreed to provide labor and services for the Brownsville Courthouse Project believing it to be protected under the Subcontract Bond. Defendant Amwest now attempts to deny payment to AMS for labor provided on the project alleging that AMS is not a subcontractor but merely "donated" its labor, time and resources.

30. Defendant Amwest's negligent misrepresentations have caused Plaintiff to suffer actual damages in an amount within the jurisdictional limits of this Court. Plaintiff sues Amwest to recover actual and exemplary damages.

E. **Waiver**

31. Plaintiff hereby incorporates the allegations set forth above.

32. Plaintiff would show that based upon the representations made to Plaintiff by Amwest as described herein, Amwest has waived any right to assert that AMS is not a subcontractor on the Brownsville Courthouse Project, is not a proper claimant under the Subcontract Bond and that AMS is not entitled to money due and owing for the labor provided on the Brownsville Courthouse Project.

F. **Estoppel**

33. Plaintiff hereby incorporates the allegations set forth above.

34. Plaintiff would show that based upon the representations made to Plaintiff by Amwest as described herein, Amwest is equitably estopped from trying to assert that AMS is not a subcontractor on the Brownsville Courthouse Project, is not a proper claimant under the Subcontract Bond and that AMS is not entitled to money due and owing for the labor provided on the Brownsville Courthouse Project.

G. **Attorneys Fees**

35. Plaintiff hereby incorporates the allegations set forth above.

36. Plaintiff has demanded payment from Defendants for the sum of $212,000.00 which represents amounts due and owing to AMS for the services AMS provided to the Brownsville Courthouse Project. Because Defendants have refused to pay under The Subcontract Bond, it is

necessary for Plaintiff to place its claim in the hands of the undersigned attorneys for collection. Plaintiff has agreed to pay said attorneys a reasonable attorney's fee under §38.001 of the Texas Civil Practice & Remedies Code. Therefore, Plaintiff is entitled to recover its reasonable attorney's fees from Defendants at the trial court, and if necessary, on appeal.

### H. Exemplary Damages

AMS is entitled to recover punitive damages from Amwest under Texas law. The actual damages sustained by AMS were caused by Amwest's fraud. Alternatively, the actual damages sustained by AMS resulted from malice, i.e. Amwest had the specific intent to cause substantial injury to AMS. Alternatively, Amwest's malice can be established by viewing Amwest' conduct objectively at the time of the occurrence. Objective evidence establishes that Amwest's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to AMS. Furthermore, Amwest had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of AMS. Accordingly, AMS is entitled to recover punitive damages against Amwest in an amount within the jurisdictional limits of the court.

### PRAYER

**FOR THESE REASONS**, the United States of America for the use and benefit of Plaintiff AMS Construction Company, Inc. d/b/a AMS Staff Leasing requests that Centex Construction, Inc., Seaboard Surety Insurance Company, and Amwest Surety Insurance Company be cited to appear and answer herein and then on final hearing, Plaintiff have judgment against Defendants, jointly and severally for: (1) the amount of $212,000.00; (2) for contractual damages and for labor provided; (3)

for actual and exemplary damages against Amwest for fraud, and/or negligent misrepresentation; (4) pre-judgment and post judgment interest at the highest rate allowed by law; (5) attorney's fees under Sec. 38.001 of the Texas Civil Practice & Remedies Code; (6) costs of court; and (7) such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

Respectfully submitted,

**REID & ASSOCIATES**
Providence Tower, Suite 255W
5001 Spring Valley Road
Dallas, Texas 75244
Telephone:    (972) 991-2626
Facsimile:    (972) 991-2678
WILLIAM E. REID
Texas State Bar No. 16748500
F. MARIANNE MATTHEWS
Texas State Bar No. 13223100

**LAW OFFICE OF HORACIO L. BARRERA**
1201 East Van Buren
Brownsville, Texas 78520
Telephone    (956) 546-7159
Facsimile    (956) 544-0602

By: _____
HORACIO L. BARRERA, ESQ.
State Bar No. 01805800
Fed ID. # 2801

ATTORNEYS FOR PLAINTIFF,
AMS CONSTRUCTION COMPANY, INC.
d/b/a AMS STAFF LEASING

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was forwarded to the following counsel of record on this the 2 day of April, 2001, in accordance with the Texas Rules of Civil Procedure.

Nancy Hesse Hamren, Esq.
COATS, ROSE, YALE, RYMAN & LEE, P.C.
800 First City Tower
1001 Fannin Street
Houston, Texas 77002

David Surratt, Esq.
J. Todd Weber, Esq.
CANTERBURY, STUBER, ELDER, GOOCH & SURRATT
Occidental Tower
5005 LBJ Freeway, Suite 1000
Dallas, Texas 75244

HORACIO L. BARRERA

# EXHIBIT "A"

# JOINT CHECK PAYMENT AGREEMENT

WHEREAS, **CENTEX CONSTRUCTION COMPANY, INC.** (hereinafter referred to as "CONTRACTOR") has been awarded a contract for construction of the **United States Federal Building / Courthouse** (hereinafter referred to as "PROJECT"); and

WHEREAS, Contractor has entered into a subcontract agreement with **Strong Hold Masonry, Inc.** (hereinafter referred to as "SUBCONTRACTOR") for the **Masonry and Stone Work** on the PROJECT; and

WHEREAS, **AMS Staff Leasing** (hereinafter referred to as "SUPPLIER") has entered into an agreement with SUBCONTRACTOR for the supply labor to the PROJECT a copy of which is attached as EXHIBIT A and for the amount not to exceed **$64,000.00**; and

WHEREAS, CONTRACTOR, SUBCONTRACTOR AND SUPPLIER desire to enter into an agreement for payments to be made jointly to the SUBCONTRACTOR and SUPPLIER for the above described materials for the mutual benefit of all the parties;

NOW, THEREFORE, in consideration of the mutual benefits to be derived from this arrangement the parties hereby agree as follows:

1. SUPPLIER hereby acknowledges that the agreement with the SUBCONTRACTOR attached as Exhibit A to this agreement represents the entire materials ordered from the SUPPLIER by the SUBCONTRACTOR for the PROJECT and the dollar amount indicated as the sales price for said materials is the total and complete amount therefor; and

2. SUPPLIER will provide to CONTRACTOR copies of all subsequent modifications to the agreement attached as Exhibit A when executed by the SUBCONTRACTOR; and

3. SUPPLIER will copy to the CONTRACTOR all invoices to the SUBCONTRACTOR related to the PROJECT; and

4. SUBCONTRACTOR will submit to the CONTRACTOR with each monthly requisition for payment on the PROJECT copies of all invoices received from the SUPPLIER for materials provided to the PROJECT through the date of the requisition for which payment has not been previously received; and

5. CONTRACTOR shall pay by a negotiable check drawn by CONTRACTOR and made payable jointly to SUBCONTRACTOR and SUPPLIER the full amount of these invoices at the time prescribed in the subcontract agreement. In accordance with the terms of the subcontract agreement between CONTRACTOR and SUBCONTRACTOR, retainage related to these materials will accrue against amounts otherwise due and owning directly to the SUBCONTRACTOR; and

6. SUBCONTRACTOR agrees to indorse the check at the offices of the CONTRACTOR, and CONTRACTOR will mail the check directly to the SUPPLIER; and

7. It is expressly agreed and understood by CONTRACTOR, SUBCONTRACTOR and SUPPLIER that this agreement does not constitute a guarantee of payment by CONTRACTOR to either SUBCONTRACTOR or SUPPLIER. Rather this agreement has the sole purpose of establishing a method by which CONTRACTOR shall make payment to SUBCONTRACTOR, for materials furnished by SUPPLIER to the PROJECT only to the extent that amounts paid would otherwise be due under the subcontract agreement between CONTRACTOR and SUBCONTRACTOR; and

8. CONTRACTOR's obligation hereunder shall extend only for materials delivered to and incorporated in the PROJECT and for the labor expended on the PROJECT site and CONTRACTOR shall have no obligation to issue a check under this agreement for any materials and labor not so furnished; and

9. At the time of full and final payment to the SUPPLIER for the materials supplied to the PROJECT, SUPPLIER will provide CONTRACTOR a full and complete waiver of claims and/or lien against the PROJECT, and all obligations of all of the parties pursuant to this agreement shall be considered satisfied in full. All notices required by or pursuant to this agreement shall be delivered by hand or by U.S. Mail to the following addresses:

FOR THE CONTRACTOR:  
CENTEX CONSTRUCTION COMPANY, INC.  
P. O. BOX 299009  
DALLAS, TX 75229

FOR THE SUBCONTRACTOR:  
Strong Hold Masonry, Inc.  
716 W. Expwy 83  
Pharr, Tx. 78577

FOR THE SUPPLIER:  
AMS Staff Leasing  
5617 Grissom Road, Suite 101  
San Antonio, TX 78236

This constitutes the full extent of our agreement related to joint check payments on the PROJECT, and cannot be modified verbally.

IN WITNESS WHEREOF, the parties hereto cause this agreement to be executed by their authorized representative on this _11_ day of _September_, 19_98_.

CENTEX CONSTRUCTION COMPANY, INC.  
BY: _[signature]_ 9/11/98

ATTEST: _[signature]_ ITS:

Strong Hold Masonry, Inc. SUBCONTRACTOR  
BY: _Michelle Cantu_

ATTEST: _[signature]_ ITS:

AMS Staff Leasing, SUPPLIER  
BY: _[signature]_

ATTEST: _Margie Biffle_ ITS:

FS-11  
JTCKAGRE.SAM  
REV 02/98

# EXHIBIT "B"



**Amwest Surety Insurance Company**
6015 Kenilworth Blvd.
Spring Branch, TX 78070-7242

Telephone Number:   (830) 885-5886

Facsimile Number:   (830) 885-5887

December 2, 1998

Tommy Campbell
Centex Corporation
Post Office Box 299009
Dallas, Texas  75229

RE:  Strong Hold Masonry, Inc.
     Brownsville Courthouse Project

Dear Mr. Campbell:

Please accept this letter as Amwest Surety Insurance Company's consent for you to enter into a joint check arrangement among Strong Hold Masonry, Inc., Centex Corporation and the three following subcontractors:

1. Valley Block & Brick
2. AMS Employee leasing
3. Shawn's Granite

Should you have any question regarding this, please don't hesitate to call me at your convenience.

Sincerely,

AMWEST SURETY INSURANCE COMPANY


Gretchen Hite
Attorney-in-Fact
South Texas-Field Manager

/gh

AMW-00004

# EXHIBIT "C"

ClibPDF - www.fastio.com



**HORIZON BUSINESS RESOURCES INC.**

July 29, 1999

Mr. Pedro A. Gutierrez
Strong Hold Masonry, Inc.
Route 2, Box 112H
Mission, TX. 78752

Re:  Principal:   Strong Hold Masonry, Inc.
     Obligee:     Centex Construction Company, Inc.
     Project:     U. S. Federal Building and Courthouse
     Bond No.:    1318679

Dear Mundo:

Centex's response to your submitted request for change orders dated July 21, 1999, indicates it will be quite some time before Strong Hold sees any additional funds from this project.

At the present time we are in receipt of the following outstanding claims:

1. AMS Staff Leasing:          $229,210.64

2. South Texas Equipment:      $ 21,514.70

3. Cold Spring Granite:        $ 34,381.00

4. Valley Block & Brick:       $  4,692.54

Your office has not provided us with any documentation indicating your firm disputes the amount claimed above, or otherwise has any defense to payment. Please be advised Amwest Surety Insurance Company will commence making payment to the above referenced claimants once it is satisfied that the individual claimant has provided the necessary and complete paperwork.

Very truly yours

Daniel J. Dziuba

cc:  Mr. Robert Shoemaker
     Mr. Tom Barber

5000 QUORUM DRIVE, SUITE 440, DALLAS, TX 75240-7509 • (972) 716-0944 • FAX (972) 716-0792
LOS ANGELES • GARDEN GROVE • SAN FRANCISCO • DALLAS • CHICAGO • HARTFORD
*An Amwest Insurance Group Company*